## M. McDonald et al. v. Thelma Denton et al.

Decided December 21, 1910.

#### 1.—Injunction—Habeas Corpus—Attempted Consolidation—Jurisdiction.

The fact that an application for injunction to restrain certain officers from issuing and executing criminal process against the applicants, was given the same number on the docket of the court as a prior application for writ of

habeas corpus under which the same applicants were released from arrest by virtue of similar process, and the attempted consolidation of the two proceedings would not deprive the bill for injunction of its purely civil character nor the parties thereto of the right of appeal, nor a Court of Civil Appeals of jurisdiction of the cause.

### 2.—Suspension of Laws—Legislative Authority.

While the Legislature has the power of suspending the general laws of the State, such suspension must be general in its application; it can not suspend them for individual cases nor for particular localities; nor can it confer such power upon an incorporated city.

### 3.—Municipal Corporation—Establishment of "Reservation."

Prostitution and the keeping of houses of prostitution being crimes unuer the laws of Texas, the Legislature can not confer upon a municipal government the right to license said crimes and give them immunity from punishment when committed in certain localities.

### 4.—Injunction—Use in Criminal Proceedings.

Courts of equity deal only with civil and property rights, and an injunction will not be granted, under the rules of equity, to restrain the prosecution of criminal proceedings nor the commission of a criminal act. This rule applies even though the statute or ordinance under which the prosecution is threatened be null and void.

ON REHEARING.

### 5.—City Ordinance—Prostitution—Implied License.

Where a city ordinance makes it unlawful for any person to rent a house to any lewd woman outside of certain prescribed limits in the city, by implication it makes it lawful to rent houses to such persons within said limits, and such ordinance would be null and void.

### 6.—Judgment—Appearance—Presumption.

Where a number of persons are made defendants to an action and judgment is rendered against all, the appellate court will presume that the trial court would not have rendered judgment against all of the defendants if all had not been cited or had not appeared and answered.

### 7.—Appeal by One of Several—Appeal Bond.

Where there was no adverse interests between the several defendants in the lower court, any one of them would have the right of appeal from a judgment against all without making the others parties; and in such case the appeal bond need not be made payable to the defendants not appealing.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Brockman, Kahn & Williams,* for appellants.—The operation of the criminal laws of the State can only be suspended by direct act of the Legislature. Sec. 28, art. 1, Constitution of Texas; Burton v. Dupree, 46 S. W., 273; Combs v. State, 44 S. W., 859; ex parte Garza, 28 Crim. App., 381; City of San Antonio v. Schneider, 37 S. W., 767.

A legislative Act which suspends the operation of the criminal law in a certain locality, and permits it to remain in effect in other portions of the State, denies to the citizens of the State equal protection of the law, and is in derogation of the Constitution of the State of Texas,

and of section 1 of the Fourteenth Amendment to the Constitution of the United States. Cooley's Const. Lim., p. 482 (6th ed.).

Injunction will not lie against a court of general jurisdiction to prevent adjudication by it of matters exclusively within its jurisdiction. Constitution of State of Texas, chapter V, sec. 1; articles 96 and 97, Code of Criminal Procedure; Acts of the Thirty-first Legislature, Regular Session, pp. 111 and 112; Clayton v. Hurt, 88 Texas, 598; Williams v. Ball, 52 Texas, 603; Holmes v. Buckner, 67 Texas, 107; Ewing v. Cohen, 63 Texas, 484; 1 High on Injunctions (3rd ed.), pars. 45 and 46; 16 Am. & Eng. Ency. of Law (2nd ed.), p. 370 (9).

Equity will not interfere to prevent criminal prosecution unless such prosecution tends to the destruction or impairment of property or property rights. City of Galveston v. Mistrot, 104 S. W., 418.

Injunction will not lie to prevent threatened prosecution under either a valid or a void statute, as an adequate remedy at law is furnished by the right of appeal. Brown v. Birmingham, 140 Ala., 590 (30 So., 173); Chisholm v. Adams, 71 Texas, 678; Crighto v. Dahmer, 21 L. R. A., 84.

*Jno. Lovejoy, W. H. Wilson* and *C. E. & A. E. Heidingsfelder,* for appellees.—The District Court in this case, on a habeas corpus hearing, having released certain persons charged with a criminal offense, and the justice of the peace and constable disregarding the judgment of the District Court, having under *alias warrants issued for the same offense and on the same complaints,* rearrested the persons so released, the parties rearrested applied again to the District Court for a writ of habeas corpus, and by a separate document applied for an order or injunction of the court enforcing obedience to the habeas corpus judgment and prohibiting violation of same thereafter. The petition for injunction and the habeas corpus proceeding were both given the same file number, and the court consolidated the petition for injunction with the habeas corpus proceeding and disposed of the matter by one judgment in the habeas corpus proceeding, releasing the persons arrested, and enjoining present and future violation of the habeas corpus, reciting in the judgment that the injunction proceedings were *"incident to"* the habeas corpus case. The court rendering a judgment in habeas corpus can properly add thereto an injunction or mandatory order against any interference therewith. The case, therefore, including the injunction, is a criminal proceeding, and the Court of Civil Appeals has no appellate jurisdiction over same; and if the mandatory orders made by the District Court were in any respect erroneous, the aggrieved person's remedy is not by appeal to the appellate courts of civil jurisdiction. Rev. Stats., 996; ex parte Haubelt, 123 S. W., 607, 608, 609; ex parte Imhoff, 123 S. W., 609; ex parte Wise, 123 S. W., 610. The latter cases being decided on the same principle as the Haubelt case.

The appeal bond in this case is not made payable to A. R. Anderson, nor is the same made payable to Tom Wilson, Rufe Daniels or C. E. Horton, although the action, if civil, is an action against each of said

parties, and although the judgment, if civil, is a judgment against each of said parties; hence, if this action be treated as a civil action, it has not been brought properly into this court, as the appeal bond should be made payable to all parties to the judgment. Haney v. Cummings, 62 Texas, 186.

The city of Houston being authorized by its charter to segregate and colonize houses of prostitution and to regulate same, and having passed an ordinance segregating and colonizing them, and actually confining them within the reservation established, and the general statute which defines the offense of conducting a house of prostitution having prohibited the citizens of the State, the county and district attorneys and the Attorney General from driving such establishments out of such reservations, and having prohibited by the same statute *interference with the control and regulation* of bawds and bawdy houses when so confined by ordinance within limits in cities of over ten thousand inhabitants, this amounts to authorization by direct action of the Legislature itself of the continued existence of such establishments and persons within such reservations, and is a law passed by the Legislature itself exempting such persons and establishments from prosecution under these circumstances. The municipal government does not in such case make an exemption from the effect of the criminal statute, but only brings about the legal existence, *and fact* of segregation. The Act of the Legislature itself, these facts existing, declares the exemption. And this power the Legislature has under the Constitution of Texas. Therefore, in such a state of facts, the persons arrested were arrested for that · which did not constitute an offense against the laws of Texas, and were properly released on habeas corpus, independent of other grounds of release. Ordinance of Houston, Mch. 30, 1908; L'Hote v. New Orleans, 177 U. S., 587; Houston charter, 1905, art. 2, secs. 2 and 16; Acts 1907, pp. 246-48; 1 Cooley's Blackstone, pp. 59, 60, 61, 86, 88; City of Austin v. Cemetery Assn., 87 Texas, 337; City of San Antonio v. Schneider, 37 S. W., 767; Const. 1869, art. 1, sec. 20; Const. 1876, art. 1, sec. 20; Davis v. State, 2 Crim. App., pp. 425, 429, 430, 431; Burton v. Dupree, 46 S. W., 272, 273; Coombs v. State, 44 S. W., 859, 860; Ex parte Kramer, 19 Crim. App., 124; Perry v. State, 41 Texas, 490.

On delegation of power: Cooley Const. Limitations, p. 140, note 1 (5th ed.); Field v. Clark, 143 U. S., 649; Miller v. N. Y., 109 U. S., 385; Buttfield v. Stranahan, 192 U. S., 470; re Kolloch, 165 U. S., 526.

While under ordinary circumstances an injunction will not issue in a *civil* suit to restrain criminal prosecutions, this principle has certain well established qualifications. (1) If the proceeding is really of criminal jurisdiction, as a habeas corpus case to release a person charged with crime, such injunctions ought to and do issue whenever deemed by the court necessary to prevent or overcome actual or threatened violations of the court's judgment of release. Such injunction is a part of the judgment in the criminal case, and is not reviewable on appeal at all, and certainly not by a court of exclusively civil jurisdiction, even

though the judge in the habeas corpus judgment may have made his judgment broader than the necessities of the habeas corpus judgment of release may have required. (2) A court of chancery in England in the exercise of its peculiar jurisdiction over infants, or in the exercise of the power vested in the court to grant the writ of habeas corpus, and as incidental to the habeas corpus jurisdiction, could issue an injunction restraining criminal prosecutions. (3) A court of equity can grant an injunction restraining criminal prosecutions where *property* rights are invaded or destroyed, as these invoke the jurisdiction of the court, which then renders such judgment as it ought under the circumstances, and as is necessary to the protection of such property rights. (4) Where a person is being subjected to repeated criminal prosecutions for acts which do not constitute a crime and on a pretense of violation of criminal law, resulting in financial loss and serious deprivation of one's liberty of action and civil rights, equity will enjoin such abuse of the criminal law and pretended prosecutions which are not in fact a legitimate attempt to enforce the criminal law. Ex parte Haubelt, 123 S. W., 608; 2 Hale P. C., 147; 1 Spence Equity Jur., 689, 690; City of Austin v. Cemetery Assn., 87 Texas, 336, 337; Greiner-Kelley Drug Co. v. Truett, 97 Texas, 382, 383; Sumner v. Crawford, 91 Texas, 131, 132; Harding v. Commrs. Court, 65 S. W., 56; Yellowstone Kit v. Wood, 43 S. W., 1068; Shinkle v. Covington, 83 Ky., 420; Old Dominion Tel. Co. v. Powers, 140 Ala., 220; Atlanta v. Gate City Gas Co., 71 Ga., 106; Georgia R. Co. v. Atlanta, 118 Ga., 486; Wallack v. Society, 67 N. Y., 23.

FLY, ASSOCIATE JUSTICE.—This is an appeal from a judgment of the District Court perpetuating a writ of injunction enjoining M. McDonald, justice of the peace; Frank S. Smith, constable, and A. R. Anderson, sheriff of Harris County, and Tom Wilson, Rufe Daniels and C. E. Horton, from issuing, serving and executing any writ or process against appellees herein, being twenty-six women, on charges of vagrancy arising from being prostitutes or conducting houses of prostitution within the limits of a certain portion of the city of Houston known as the Reservation, "now or hereafter."

It appears from the pleadings and evidence that the women had been arrested by the county officers on charges of vagrancy, growing out of their being prostitutes or engaged in keeping houses for the purposes of prostitution. They lived in a portion of the city of Houston set apart and designated by the city authorities for the plying of their vicious vocations. They applied for and obtained a writ of habeas corpus from the judge of the Sixty-first Judicial District, and they were released by him. The appellees thereafter failing to make their appearance in the Justice's Court, their bonds were forfeited, and the writ of injunction was applied for in the same court by the women and two men associated with them, and was granted temporarily, and on final hearing perpetuated. There is no attempt to disguise the fact that appellees are prostitutes or engaged in conducting houses of prostitution, the claim being that they have the right and authority to engage in such practice

under the authority of the charter of Houston, and an ordinance of its government in designating and setting apart a certain portion of the city where the same shall be legal and proper.

This suit was one seeking for an injunction, and clearly one separate and apart from the application for a writ of habeas corpus, and no action of the court, if such action was taken, in giving this case the same number as the application for habeas corpus, and attaching the judgment in that case, rendered on June 26, 1909, to the one rendered herein, for whatever reason it may have been done, can make this a habeas corpus case and deprive appellants of the right to appeal from the judgment on the injunction. It might be, although we do not think so, that the court could enjoin the officers in order to prevent them from interfering with its judgment on habeas corpus, although the more summary manner would have been contempt proceedings; still the object of the suit was not alone to prevent prosecution under the charges already made, but to permanently prevent the county and precinct officers from enforcing certain criminal laws, enacted by the Legislature, in certain portions of the city of Houston. Appellants were not parties to the habeas corpus proceedings and had nothing to do therewith, and have only appealed from the judgment in the injunction proceedings, and their appeal is a civil case of which this court has jurisdiction under the laws and Constitution of Texas. The failure to render judgment for the costs against appellants would have the effect, it seems to be the contention of appellees, to change a case from one of a civil to one of a criminal character and thereby defeat the jurisdiction of this court. The district judge may have been of opinion that he could not assess the costs against any one because it was a criminal case, but neither could that affect the jurisdiction of this court. The clerk seemed to have no doubt about the costs, for he has appended to the record a bill of costs for all of his services in connection with the case.

In the State Constitutions of 1845, 1861, 1866 and 1869, it is provided: "No power of suspending laws in this State shall be exercised except by the Legislature or its authority." Quite significantly, in the Constitution of 1876, the words, "or its authority," are omitted. Art. 1, sec. 28, Constitution of 1876. If the change had any significance, it evinced a desire upon the part of the makers of our present Constitution to restrict the power to suspend laws to direct action upon the part of the Legislature.

It is the general rule that the Legislature, although given the power of suspending the operation of the general laws of the State, must make the suspension general, and can not suspend them for individual cases or for particular localities (Cooley, Const. Lim., p. 558), for it is a maxim of constitutional law that legislative bodies "are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plough." Judge Cooley says this is the test for the authority and binding force of legislative enactments. Under that test the Legislature would not have the authority to do directly what appel-

lees contend it has attempted to do by delegating authority to the city of Houston, to suspend certain laws of Texas as to certain individuals in certain localities.

In the charter granted by the Legislature to the city of Houston it is provided: "To prohibit and punish keepers and inmates of bawdy houses and variety shows, and to segregate and regulate the same, and to determine such inmates and keepers to be vagrants and provide the punishment of such persons." Special Acts, 1903. This is the authority upon which the city of Houston has established its "Reservation" for lewd women and the keepers of houses of prostitution, and has suspended and set aside the laws of the State as to one class of vagrants, and annulled the statutes punishing the keeping of houses of prostitution. The Legislature of Texas itself could not have suspended such laws in a part or the whole of the city of Houston, and, of course, it can not empower the municipal government to do so. It may be doubted that the Legislature intended to delegate any such authority.

It was the duty of the county and precinct officers to arrest and try offenders violating the laws of the State, wherever such violations might occur within their county or precinct, and what their reasons may have been in this instance for endeavoring to enforce the law can not have the effect of nullifying their efforts. The motives for enforcement of a law can not be looked to in determining the validity of the enforcement.

Under the laws of Texas, prostitution and the keeping of houses of prostitution are crimes, and it is almost inconceivable that a Texas Legislature would confer upon a municipal government the right not only to regulate but to license crime and give it in certain locations approbation and approval. As said by Justice Neill for this court in the case of the City of San Antonio v. Schneider, 37 S. W., 767: "We can not believe that the Legislature of this State ever intended to authorize the city council to license and tax what its statutes denounce as a crime against society; for to license, tax, or even regulate crime is something unknown to civilization." Crime is defined and punished, and it would be monstrous to allow the license or regulation of a thing expressly prohibited by law. Regulation implies a right to perform or do certain acts, and can not be applied to matters inhibited by law and good morals. The toleration and regulation of crime is giving it at least qualified approval, and is more disastrous in its effect upon the minds of the young than if no effort was made to denounce, control, or prohibit it. Better far that the crimes under discussion were not denounced by the law, than that they should be denounced and then licensed, and it is an anomalous, an incongruous proceeding that, so far as we know, has never been sanctioned. We learn that in ancient times cities of refuge were erected in which those who had committed certain crimes could flee and obtain immunity and protection, but it remained for this age to erect places where vicious persons shall have the right to continually commit certain crimes and continually obtain immunity from punishment.

In the case of ex parte Garza, 28 Court of App., 381, it appeared

that the city of San Antonio was given by its charter the power to "restrain and punish vagrants, mendicants, street beggars, and prostitutes," and "to prevent and punish the keeping of houses of prostitution within the city or within such limits therein as may be defined by ordinance, and to adopt summary measures for the removal or suppression, or regulation and inspection of all such establishments." That language is as full and more explicit and comprehensive than the language in the charter of Houston, and yet the Court of Appeals held that it was not the intention of the Legislature to repeal penal laws of the State aimed at prostitution, and that the provisions did not confer, and were not intended by the Legislature to confer, upon the municipal authorities the power to license persons to violate laws of the State. The ordinance licensing the crime was held to be without authority of law, repugnant to a valid general law and, therefore, null and void.

The question herein involved is directly passed upon by the Court of Civil Appeals of the Third District, and, after quoting section 28 of article 1, Constitution of 1876, it was said: "This section restricts the power to suspend laws to the Legislature, and expressly prohibits the exercise of such power by any other body. In view of this provision of the Constitution, it must be held (whatever may have been the power of the Legislature under former Constitutions) that that body can not now delegate to a municipal corporation, or to anyone else, authority to suspend the statute law of the State." Burton v. Dupree, 19 Texas Civ. App., 275 (46 S. W., 272). It was a similar case to this, and it was held that the city of Waco could not set apart a certain portion of its territory and exempt from punishment offenders against articles 359-361 of the Penal Code of Texas.

So in the case of Coombs v. State, 38 Texas Crim. Rep., 648 (44 S. W., 854), decided by the Court of Criminal Appeals, the matter is discussed, and it was held that the power to suspend the laws of this State could not be delegated by the Legislature to a municipal corporation.

Not only do we conclude that the officers of Harris County should not have been interfered with in their duty of suppressing an act defined as a crime because it was their duty to take such action, but, even though the city of Houston had the right under the Constitution to license crime, which is a monstrous proposition, and had done so, the trial court had no authority to issue a writ of injunction to prevent the officers from ever arresting the licensees. For it is a generally accepted rule that courts of equity deal only with civil and property rights, and that an injunction will not be granted to restrain the prosecution of criminal proceedings or the commission of a criminal act. State v. Patterson, 14 Texas Civ. App., 465. The rule applies even though the statute or ordinance under which the prosecution is threatened is null and void. Joyce, Inj., secs. 59-60; Chisholm v. Adams, 71 Texas, 678. The rule as stated is well fortified by numerous authorities, a few of which will be reviewed.

In the case of Brown v. Birmingham, 37 So., 173, the appellant

sought to enjoin the mayor and aldermen of the city of Birmingham from enforcing or attempting to enforce by quasi criminal prosecutions a certain ordinance of the municipality which was alleged to be void. The Supreme Court of Alabama held: "We discover nothing in the case made by the bill to take it out of the well-settled general doctrine that the jurisdiction of courts of equity is purely and exclusively civil; that, of consequence, they are without power to enjoin the commission of threatened crime on the one hand, and to enjoin threatened prosecutions for the commission of alleged crimes on the other; that violations of State laws, and violations of penal municipal ordinances, and prosecutions for both, stand upon the same footing, in this connection; and that it is wholly immaterial that the statute or ordinance, for an alleged violation of which prosecution is threatened, is absolutely void. . . . The administration of State and municipal governments in the prosecution of alleged violators of their penal laws or of violators of their supposed criminal laws, must be left to take their own course in the courts ordained to administer those laws, unhindered by courts of equity, whose activities are, in general, strictly confined to matters of a purely civil nature; and this, though such administration may wrongfully entail damages upon the citizen, which are grievous indeed and beyond all remedy either because in their nature irreparable, or because he is balked of their recovery by the insolvency of those responsible for the prosecutions."

The case of Levy v. Kansas City, 86 Pac., 149, is quite similar to the one at bar. In that case an ordinance had been passed to permit gambling in certain portions of the city, and Levy had paid a license of $5,000 to run a gambling house in the "Reservation" and he was arrested and fined, and he procured a writ of injunction to prevent the officers from arresting him again, and the injunction seems to have been placed on Levy instead and to prevent the opening of his gambling house. The Supreme Court of Kansas said: "This is probably the first instance in the history of the State that a professional criminal, confessing to a daily violation of the law, has had the effrontery to apply to a court of equity for protection from arrest and public prosecution while he pursues his criminal vocation. It would indeed be a sad commentary on our jurisprudence if a justification could be found for holding that a license to commit crime, issued by a city administration, could be made the basis of equitable interference for the protection of the holder from public prosecution while he continues to violate the law."

In the case of ex parte Sawyer, 124 U. S., 200, 31 L. Ed., 402, a number of cases are reviewed, and the Supreme Court held: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the

removal of public officers, is to invade the domain of courts of common law or the executive and administrative department of the government." See also Littleton v. Burgess (Wyo.), 2 (new series) L. R. A., 631, 82 Pac., 864, where the authorities are fully collated in the notes and several discussed in the opinion, and the well-digested case of Kelly v. Conner (Tenn.), 123 S. W., 622.

The decisions reviewed herein place their action on the broad ground that courts of equity have no authority or power to interfere with purely criminal proceedings, but there are other decisions which deny relief upon the ground that adequate remedies exist at law. Tyler v. Story, 44 Texas Civ. App., 250 (97 S. W., 856); Kissinger v. Hay, 52 Texas Civ. App., 295 (113 S. W., 1005); Greiner-Kelley Drug Co. v. Truett, 97 Texas, 377.

In the case of State v. Patterson, 14 Texas Civ. App., 465, it is said: "It is only when property or civil rights are involved and irreparable injury to such rights is threatened or is about to be committed, for which no adequate remedy exists at law, that courts of equity will interfere by injunction for the purpose of protecting such rights." That language was used in a case in which it was sought to restrain persons from conducting and maintaining a gambling house, and if an injunction can not be issued to prevent crime, surely the beneficent powers of a court operated under the guidance of equity and good conscience, can not be invoked to permit a certain class of persons to live in shameless disregard and open violation of the laws of the State of Texas. "A court of equity is never active in relief against conscience or public convenience," was said by an English jurist in Smith v. Clay, and quoted in Johnson v. United Railways (Mo.), 127 S. W., 63, and that axiom applies with vigor in this case.

No question of property rights is involved in this suit, but it is an open attempt to gain the assistance of a court of equity to grant criminals the power and authority to ply their infamous vocations in disregard and contempt of the laws of the State. "Without doubt courts of equity have no jurisdiction to entertain a bill to construe a valid criminal statute, and pending the proceeding, or at its termination, enjoin prosecutions for violations of it." Kelly v. Conner, herein cited. As said by the Supreme Court of Texas in the case of Greiner-Kelley Drug Co. v. Truett, 97 Texas, 377: "Now, the law itself gives the definition of the offenses which it intends shall be punished and prescribes the courts in which and the procedure through which it is to be applied and the guilt or innocence of persons prosecuted under it is to be determined. In our opinion it would be little short of usurpation for a court of equity to take hold of the officers and substitute, in advance, for the definitions of the law, its own, and enforce by the writ of injunction conformity to the rule prescribed. Especially is this true where the final construction of the penal laws is intrusted to the Court of Criminal Appeals and not to the courts administering civil remedies." The courts and other agencies intrusted with the enforcement of the criminal laws of the State, have the right to pursue their course

in performance of their duties unhampered and unrestrained by courts of equity, whose assistance, advice or commands are not needed to guide those agencies in the discharge of their duties.

The judgment of the District Court, enjoining the peace officers of Harris County from enforcing certain laws of the State of Texas in certain localities in the city of Houston, and from the performance of their duties in forfeiting the bonds of criminals, is reversed and the cause dismissed at the cost of appellees.

### ON MOTION FOR REHEARING.

It is claimed that in quoting the provision of the charter of the city of Houston in which the authority is granted to set apart a portion of the city where lewd women can with immunity ply their vocation, this court copied the provision of 1903 instead of that of 1905, which is now in effect. The language of the charter of 1905 is perhaps a little stronger and wider in its sweep, but is just as much opposed to the Constitution as the other, and it can make no difference in the decision of the case.

It is seriously argued that "there is not a line in the ordinance which undertakes to exempt from criminal prosecution of any such person or establishment. The sole and only effect of the ordinance is to colonize and segregate such persons and establishments so as to effectually exclude them from other portions of the city." The ordinance makes it unlawful for any person to rent any house to any lewd woman outside of the prescribed limits. The implication from that is irresistible that inside those limits it shall be lawful to rent houses to the persons for the purposes named. The same provisions appear in regard to conducting such houses. Clearly, they are legalized within the limits denominated the "Reservation," the very name of which indicates a setting apart for particular purposes. The "Reservation" is clearly a place of refuge for lewd women, and the trial court in its judgment recognizes it as such in the recitation: "And the court being further of the opinion that the Legislature of the State of Texas had authorized the existence of houses of prostitution within the limits of the Reservation, and had therefore exempted such persons from prosecution when living within the Reservation; and that the plaintiffs were therefore guilty of no offense against the laws of Texas, and ought not to be repeatedly arrested because of matters which did not constitute a crime." The trial court evidently thought that the laws of the State on the subject of prostitution were set aside in the Reservation, and any other view of the matter is utterly untenable. It took the joint action of the Legislature and city to bring about the desired result, which is colonization of criminals with a grant of immunity from punishment.

The petition was directed against McDonald, justice of the peace; Frank S. Smith, constable, and his deputies; A. R. Anderson, sheriff, and his deputies; and Tom Wilson, Rufe Daniels and C. E. Horton, and an answer is filed in the name of the defendants and signed by the

attorneys for the defendant. It is true the answer is sworn to by only two of the defendants, but that does not alter the fact that all of them answered, and when judgment was rendered it was against McDonald, justice of the peace; Frank S. Smith, constable, and his deputies; A. R. Anderson, sheriff of Harris County, and his deputies; and Tom Wilson, Rufe Daniels and C. E. Horton. Still, in the face of this record, it is asserted in the motion that "none of these five persons were cited and none of them have appeared or answered in the case." This court will presume that the trial court would not have rendered judgment against all of the defendants if all had not been cited, or had not appeared and answered.

There was no adverse interest between the defendants in the lower court, and any one of them had the power and authority to appeal without making the others parties. It was, therefore, unnecessary for the parties appealing in this case to make their co-defendants parties to whom the appeal bond is payable.

It is stated in the motion that "When the Legislature by the Act defining crime declares that the act denounced, when done in a certain place and under certain conditions, shall be regulated and not suppressed, this not only impliedly but expressly declares that the act shall be permitted in that place." The case of City of Austin v. Austin Cemetery Association, 87 Texas, 330, is cited as authority to sustain that proposition. In that case there was no discussion of the question as to the power of the Legislature to delegate authority to a city to set aside State laws as to a certain class of criminals, but the whole matter in that case was as to the right of the City of Austin to pass ordinances to determine the location of cemeteries within its boundaries. There is nothing in that decision that sustains the proposition of appellees. No State law was involved in that case, but only an ordinance of the city prohibiting the burial of the dead in certain places, and prescribing a penalty for its violation. It was a matter not wrong in itself, but merely because it was prohibited. The crime of prostitution is an offense against public decency and good morals, and would be wrong whether prohibited by statute or not. Theft could with as much propriety be licensed by law, or have a reservation set apart within whose bounds its votaries and disciples could find shelter, protection and immunity. The motion is overruled.

*Reversed and dismissed.*

Writ of error refused.