HATCHER et al. v. CITY OF DALLAS et al.

(Court of Civil Appeals of Texas. Jan. 14, 1911. Rehearing Denied Jan. 21, 1911.)

1. EMINENT DOMAIN (§ 2*)—DAMAGING PROPERTY FOR PUBLIC USE — REGULATION OF BAWDY HOUSES.

The Dallas ordinance prohibiting bawdy houses except in a defined district does not infringe the constitutional prohibition against damaging property for public use without adequate compensation, on account of injury resulting to property adjoining such district.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

2. INJUNCTION (§ 85*)—SUBJECTS OF RELIEF—VOID ORDINANCES.

Injunction lies to protect private rights against an illegal ordinance.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. § 85.*]

3. MUNICIPAL CORPORATIONS (§ 594*)—POLICE POWER—REGULATION OF BAWDY HOUSES.

Prohibiting bawdy houses except in a defined district constitutes legitimate exercise of police power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1327; Dec. Dig. § 594.*]

4. CONSTITUTIONAL LAW (§ 81*) — POLICE POWER.

Under the police power the Legislature, or its delegated agents, can prescribe regulations for the good order, peace, health, comfort, and morals of a community, not violating organic law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

5. CONSTITUTIONAL LAW (§ 81*)—POLICE REGULATIONS—VALIDITY.

That a law, necessary for the welfare of society, regulates trade or substantially interferes with the enjoyment of private property, does not render it unconstitutional.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

6. EMINENT DOMAIN (§ 2*)—POLICE REGULATIONS.

Police regulations do not constitute a taking under the right of eminent domain.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

7. CONSTITUTIONAL LAW (§ 253*)—DUE PROCESS—POLICE REGULATIONS.

Police regulations do not constitute a deprivation of property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 732–735; Dec. Dig. § 253.*]

8. MUNICIPAL CORPORATIONS (§ 594*)—POLICE REGULATIONS—BAWDY HOUSES.

Under the express terms of Dallas City Charter, and under Pen. Code 1895, art. 362a, as added by Laws 1907, c. 132, providing that that section and section 362b shall not affect the regulation of bawdy houses in cities acting under special charters, where such houses are confined to designated districts, the city

is empowered to prescribe limits outside of which bawds shall not reside.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1327; Dec. Dig. § 594.*]

9. MUNICIPAL CORPORATIONS (§ 592*)—REGULATION OF BAWDY HOUSES—VALIDITY.

The Dallas ordinance prohibiting bawdy houses except in a defined district is not void as conflicting with the Penal Code prohibition against keeping such houses; no penalty being prescribed nor license given.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1311–1314; Dec. Dig. § 592.*]

10. INJUNCTION (§ 85*)—SUBJECTS OF RELIEF—ENFORCING LAWS.

A court of equity cannot enjoin peace officers from enforcing a valid criminal statute.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 155; Dec. Dig. § 85.*]

11. INJUNCTION (§ 84*)—SUBJECTS OF RELIEF—MUNICIPAL REGULATIONS.

Courts will not enjoin adoption of an ordinance within the legislative discretion of the governing body of a municipal corporation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 154; Dec. Dig. § 84.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Henry Hatcher and others against the City of Dallas and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

William H. Clark, Edward P. Dougherty, and John F. Murphy, for appellants. James J. Collins and Jno. C. Robertson, for appellees.

TALBOT, J. This suit was instituted by the appellant Henry Hatcher November 17, 1910, on behalf of himself and other citizens and taxpayers of the city of Dallas similarly situated, against the appellees, the city of Dallas, a municipal corporation, and S. J. Hay, the mayor of said city, and D. F. Sullivan, William Doran, C. B. Gillespie, and Harry Seay, its commissioners, to enjoin appellees from putting into effect and enforcing, and to have declared void, an ordinance of the city of Dallas, passed by its board of commissioners on November 14, 1910, and approved by its mayor pro tem., November 15, 1910, prohibiting bawdy houses or the inmates thereof, except within the district and territory designated in said ordinance. The ordinance sought to be enjoined and declared void specifically describes the territory designated, and, omitting its caption and such description, is as follows:

"Be it ordained by the board of commissioners of the city of Dallas:

"Section 1. That all bawdy houses and the inmates thereof, as defined by law, are hereby prohibited in any part of the city of Dallas except the district and territory hereinafter designated, within which district in accordance with article 362a of the Penal Code of the state of Texas, they shall hereafter be confined.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

"Sec. 2. That no spirituous, vinous or malt liquors shall ever be drunk in any bawdy house within said district or territory or on the premises connected with any such house.

"Sec. 3. That no saloon as the same is defined by the city charter of the city of Dallas, shall ever be established in the said territory hereinbefore defined, and that no spirituous, vinous or malt or intoxicating liquors of any kind whatever shall ever be sold within said district or territory and no spirituous, vinous or malt or intoxicating liquors of any kind whatever shall ever be given away within said territory. That any person violating any of the provisions of sections 3 and 2 hereof or violating any of the rules and regulations of the board of commissioners or board of health or health officers or chief of police, shall be subject to a fine in any sum not to exceed two hundred dollars, and each and every day that any saloon exists within such territory shall be a separate offense.

"Sec. 4. That all bawdy houses and the inmates thereof shall be subject to such police regulations and rules as may be prescribed by the board of commissioners, and such rules and regulations as may be prescribed by the health officer or board of health regulating and controlling their conduct, or such rules and orders as may be given by the chief of police.

"Sec. 5. That any person violating any of the provisions of this ordinance shall be subject to the penalty provided by law.

"Whereas, on account of the fact that the public health and public peace and public safety are affected by lack of efficient regulation and control of bawdy houses, there exists an urgency and emergency on account of the immediate preservation of the public health, public peace and public safety requiring that this ordinance shall take effect immediately, it is, therefore, ordained that this ordinance shall take effect immediately upon its passage by the board of commissioners and approved by the mayor of the city of Dallas.

"Approved as to form only. James J. Collins, City Attorney. Passed November 14, 1910. Correctly enrolled November 15, 1910. James J. Collins, City Attorney. Harry L. Seay, for Board of Commissioners. Approved November 15, 1910. D. F. Sullivan, Mayor pro tem. J. B. Winslett, City Secretary."

The petition of the plaintiff Henry Hatcher alleges: That the charter of the city of Dallas provides that all powers conferred on said city by said charter shall be exercised by a mayor and four commissioners. That for the past four years the defendant S. J. Hay has been in office as the duly qualified mayor and the other defendants as the duly elected commissioners of said city. That section 11 of article 3 of said charter grants the power and makes it the official duty of said board of commissioners, of which the mayor is ex officio a member, to adopt all laws and ordinances touching every object, mat-

ter, and subject within the purview of said municipal government, subject to the limitation that "such laws and ordinances shall not be inconsistent with the Constitution and laws of this state." That section 2, art. 2, of said charter provides: "No ordinance shall be enacted inconsistent with the laws of the state of Texas; that the inhabitants of the city of Dallas shall have full power of self-government, and it shall have and exercise all powers of municipal government not prohibited by this charter, or by some general law of the state of Texas, or by the provisions of the Constitution of the state of Texas." Section 37 of article 2 prohibits an ordinance of the city of Dallas from providing a lesser penalty than is prescribed for a like offense by the laws of this state. That the city of Dallas has not the power, and that it is illegal and a wrongful usurpation of authority for said board of commissioners to attempt to make lawful in Dallas that which the general laws of Texas declare to be a crime and prohibit and punish as criminal in Texas. That a "bawdy house" is prohibited and made criminal and severely punished in Texas by the general laws of Texas (Act 1907, Pen. Code), as follows, to wit: "Article 359 (as amended by Laws 1907, p. 246). A bawdy house is one kept for prostitution, or where prostitutes are permitted to resort, or reside, for the purpose of plying their vocation. A 'disorderly house' is any assignation house, that is, a house, room or place, where men and women meet by mutual appointment or by appointment made by another for the purpose of sexual intercourse." Following the foregoing allegations, the petition sets out article 359a of the statute of 1907, defining a procurer and making his acts punishable; article 361, declaring that any person who shall directly or as agent for another or through any agent keep or be concerned in keeping, aid or assist or abet in keeping, a bawdy house or disorderly house, etc., shall, on conviction, be punished by a fine of $200 and by confinement in the county jail 20 days for each day he shall keep, be concerned in keeping, or knowingly permit to be kept, such bawdy house or disorderly house; and article 363, making it the duty of sheriffs, constables, mayors, marshals, chief of police, their deputies and assistants, to discover and report to the proper legal authorities and by all lawful means to aid in the enforcement of the law for all violations of the articles above referred to, etc.

The petition further alleges: That said ordinance, if allowed to go into effect, will seriously damage and depreciate the value of plaintiff's property, situated outside of and contiguous to said reservation without compensation therefore, contrary to the provisions of the Constitution of Texas, by rendering his houses contiguous to the reservation and the dwellings of others similarly situated unfit for the occupancy of respectable people, destroy the morals, peace, and or-

der of that neighborhood of the city, drive out and turn away the respectable citizens from that vicinity, and dedicate the same to immoral and criminal purposes of bawdy houses and the lewd and vicious attendants thereof. That on, to wit, the 14th day of November, 1910, said Police Commissioner Seay, and the other members of the board of commissioners of the city of Dallas acting with him, prepared and introduced at a regular meeting of said board and enacted said ordinance permitting and attempting to make lawful bawdy houses in said territory and make and declare said territory a "reservation," contrary to and in utter disregard and violation of said general law prohibiting and punishing the same as criminal; and thereupon, on November 14, 1910, passed a resolution waiving the reading and voting on the said ordinance at three regular successive meetings of the board, and then and there passed said ordinance to its third and final reading, together with an emergency clause in order for it to take effect at once (after being published three successive days), instead of within 30 days, as it would have done under the charter without the emergency clause. That said ordinance after being enacted on November 14, 1910, as aforesaid, was approved, in accordance with the charter, on the next day, November 15, 1910, by D. F. Sullivan, mayor pro tem., and was duly enacted and will be published as required by section 1, art. 13, of said charter for three days successively in a newspaper, whereupon said ordinance will become effective in the city of Dallas and will attempt to make and have the effect of making lawful contrary to and in violation of the Penal Code of Texas, and will set apart and dedicate for the unlawful use of bawdy houses, in disregard and in violation of said laws, the premises situated in the city of Dallas, and described in said ordinance set out above, and being blocks 377–379 and 380–389 and 390–391 of the city of Dallas. That the defendants, and each of them, by the passage of said ordinance, have and are now wrongfully and unlawfully engaged "in aiding and abetting" the keeping and the contemplated keeping of bawdy or disorderly houses at, in, and upon said premises, wrongfully and unlawfully setting apart and dedicating the same by said ordinance as a reservation wherein persons can and will run bawdy houses with impunity, in violation of the Penal Code of Texas. That said attempted reservation for bawdy houses is situated about three-fourths of a mile into North Dallas, and fronts about 1,-700 feet on Cochran street and McKinney avenue, excepting a narrow strip 150 feet wide, which strip between the "reservation" and Cochran street and McKinney avenue outside of the reservation is adjacent to it and would not be used by respectable people. The property between the "reservation" and Caroline street on the east, over which the Lake avenue cars run after leaving McKin-

ney avenue, would also be rendered unfit for families. Plaintiff avers that a greater menace to the public, including plaintiff, who lives on McKinney avenue near the proposed reservation, than the depreciation in value of many thousands of dollars worth of property contiguous to the reservation, would be that the Oak Lawn, Fairland, Highland Park, and Lake avenue street cars would be filled with the habitués of this "reservation" from "the loop" to the Dallas Branch, coming and going, which would render all of those cars unfit for use by the wives and daughters of all of North Dallas, including Oak Lawn and Fairland. That said ordinance so enacted, if allowed to go into effect, will deprive plaintiff and many others located in that locality of their right given them as citizens by the law to enjoin bawdy houses of prostitution and assignation and suppress, vacate, and remove this reservation from their neighborhood, to the great and irreparable damage of plaintiff and those similarly situated. That plaintiff's property so affected by the said ordinance is partly owned by him in fee simple and partly under his care, protection, and supervision as the duly appointed and qualified guardian of the estate of the minors J. P. and W. H. Thomas, in and by the county court of Dallas county; and plaintiff brings and prosecutes this suit individually and as such guardian of said minors, as well as for all others opposing the municipal legislation complained of herein. That plaintiff is the absolute owner of 50x175 feet in block 948 in the city of Dallas, fronting on the north side of McKinney avenue, which is the homestead of himself and family of the value of $8,000, and it will be rendered undesirable and damaged and depreciated in value on account of the immoral, contaminating influences of said street cars being used by the habitués of said "reservation" as aforesaid and on account of the property being situated in the neighborhood of said "reservation" in the sum of $2,000. That as the guardian of said minors plaintiff has in his possession and control and is in duty bound to preserve and protect from injury and damage 233 feet front on the north side of Cochran street, between Lamar and Laws streets, with a depth of 150 feet in block 390 in the city of Dallas, south of and adjacent to said proposed "reservation" and between it and Cochran street. That if said ordinance be allowed to go into effect this valuable residence property now improved with six residences, and of the reasonable value of $15,000, will be rendered unfit for homes and will be greatly depreciated in value, to the extent of about $7,500. That the remainder of said block 390, fronting on Ardrey street, about 233 feet, with a depth of about 110 feet, likewise a part of the estate of said minors, is embraced in and set apart and dedicated by said ordinance for the use and purposes of said "reservation," and said property, which is improved with seven residences, and of the val-

ue of $10,000, will have to be used for the unlawful and immoral purposes of bawdy houses by plaintiff against his wishes and protest, or allowed to remain vacant should said ordinance go into effect, to his damage $2,500. That plaintiff will not rent this property for the criminal and immoral use of bawdy houses, and for the defendants, by enacting said ordinance, to destroy the same, or force its use for this unlawful and immoral purpose, is beyond their authority or power, and contrary to and in violation of the Constitution and the laws of Texas; and if said ordinance be allowed to go into effect it will result in irreparable injury to the plaintiff, individually, in the sum of $2,000, and to said estate of which he is guardian in the sum of $10,000. That said reservation will fill up with bawdy houses and their inmates at once upon said enacted ordinance going into effect, with the results aforesaid. That said ordinance is void because: (a) It is inconsistent with and in conflict with and repeals said general laws (Penal Code) of Texas, to wit, articles 359–361, inclusive, and is in violation of the Constitution of Texas. (b) That it is also void because it attempts to set apart and dedicate plaintiff's property to an unlawful and criminal and immoral use. (c) That it is void because it attempts to create a criminal nuisance adjacent to plaintiff's property, to the injury thereof. (d) That it is unconstitutional and void because it damages and injures plaintiff's said property outside of and adjacent to, or sufficiently near, said reservation to be rendered unfit for residence property, without compensation therefor.

The plaintiff prays for a temporary writ of injunction, restraining and prohibiting the defendants, and each of them, from further publishing in any newspaper said ordinance, as required by the charter of the city of Dallas; and from in any wise putting into effect or causing said ordinance to be enforced and going into effect; and from treating or giving said ordinance any force or effect whatsoever pending this suit; and from in any wise creating or setting apart the territory described in said ordinance as a reservation for the purpose of bawdy houses pending this suit; and that upon the trial of this cause plaintiff have judgment setting aside and canceling said ordinance, and holding it null and void; and for such other and further relief, general and special, in equity and at law, as to the court may seem fit and proper.

On the 19th day of November, 1910, the Brown Cracker & Candy Company intervened in the suit and alleged, in substance, that it was a corporation, organized under the laws of Texas and engaged in the manufacture of crackers and candy; that its factory and place of business is situated just across Cochran street from the southwest corner of the proposed "reservation"; that intervener has in its employ and engaged at their work in its said factory many respectable women and young ladies, in number about 200; that for these ladies to be subjected to the scenes which would be incident to a reservation for bawdy houses would be so intolerable as to render their remaining employed there under such circumstances impossible; that in coming to and going from their employment and work they would have to come in contact with the habitués of said reservation and be subjected to the indignities incident thereto. That these facts will cause intervener to lose its said employés or get others in their places, which will be impracticable, if not impossible; that intervener's property is of the reasonable approximate value of $500,000, and will be greatly depreciated in value, and its business greatly injured as aforesaid by said ordinance setting apart said "reservation" for bawdy houses, to intervener's irreparable injury, $25,000; that said locality was selected for said factory, among other reasons, because the adjacent resident property rented reasonably and was desirable as homes for its employés. In addition to these allegations, the intervener adopted the allegations of the plaintiff's petition and joined in the prayer thereof. Upon presentation of the plaintiff's petition, the clerk of the district court was directed by the judge thereof to issue notice to the defendants to show cause, on a day set, why the plaintiff's application for the injunction prayed for should not be granted. The defendants filed an answer, not sworn to, in which they pleaded a general demurrer, a general denial, and special matter not necessary to state. On November 21, 1910, the petitions of the plaintiff and intervener came on to be heard, and, upon presentation of the defendants' general demurrer to said petitions, the same was sustained and the writ of injunction as prayed for was denied. From the judgment of the court, the plaintiff and intervener appealed.

The appellants contend, in effect, under their first assignment of error, that the trial court erred in sustaining the general demurrer to their petitions, because, they say, the allegations of said petitions show that the defendants, by the passage of the ordinance in question, and thereby creating and locating what is known as a "reservation" for the criminal and immoral use of bawdy houses, were, contrary to that provision of our Constitution which declares that "no person's property shall be taken, damaged or destroyed for or applied to public use, without adequate compensation being made, unless by consent of such person, about to, and would if not enjoined, injure and damage complainants' property, situated in the city of Dallas and adjacent to such reservation" to the extent of about one-half of its value, without their consent and without compensation; therefore the passage of said ordinance was without authority of law and void.

After that careful investigation and thoughtful study the importance of the question involved demands, we have reached the con-

clusion that appellant's contention should not be sustained. The right of the citizen by injunction to protect his rights of property when menaced by an illegal or void ordinance cannot be denied. The ordinance sought to be enjoined in this action, however, is not, in our opinion, void. It neither undertakes to prohibit absolutely the keeping of bawdy houses, nor does it authorize the maintenance of such houses, or give freedom to the vocation of the women who may occupy them. It simply "attempts to confine their domicile, their lives, to certain territorial limits," and its passage and adoption was but the legitimate exercise of the police power over the subject to which it relates. It is clearly the right of the Legislature, or its delegated agents, in the exercise of this power, to prescribe regulations, for the good order, peace, health, comfort and morals of the community, which do not violate any of the provisions of the organic law; and it has frequently been held that the mere fact that a law, necessary for the welfare of society, regulates trade or substantially interferes with the enjoyment of private property, does not render it unconstitutional. Police regulations are not a taking under the right of eminent domain or deprivation of property without due process of law. Illustrative of this are those cases holding that a prohibition upon the use of property for purposes that are declared by valid legislation to be injurious to the health or safety of the community cannot, in any sense, be deemed a taking or an appropriation of property for the public benefit, as such legislation does not disturb the owner in the control or use of his property, nor restrict his right to dispose of it. Further illustrations will be found in those cases which hold that the destruction in the exercise of the police power of the state, of property used in violation of law, in maintaining a nuisance, or preventing the spread of fire, etc., is not an infringement of a constitutional provision that property shall not be taken or damaged without compensation. It is truly said that each individual holds his property subject to the ordinary and reasonable exercise of the police power, and the fact that its exercise may in a particular case work pecuniary injury has been adjudged insufficient to stay legislative action. Mr. Dillon, in his work on Municipal Corporations (4th Ed. § 141), says: "Laws and ordinances relating to the comfort, health, convenience, good order, and general welfare of the inhabitants are comprehensively styled police regulations. It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances.' They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury it is either damnum absque injuria, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

The principle here announced was applied by the Supreme Courts of Louisiana and of the United States, in the well-considered case of George L'Hote v. City of New Orleans, 51 La. Ann. 93, 24 South. 608, 44 L. R. A. 90, 177 U. S. 587, 588, 20 Sup. Ct. 788, 44 L. Ed. 899—a case in which, like the present, the power of the city of New Orleans, by ordinance to assign the limits beyond or outside of which houses of prostitution should not be permitted, was involved. In that case, Mr. Justice Brewer, speaking for the Supreme Court of the United States, after stating that one of the difficult social problems of the day is what shall be done in respect to those vocations which minister to and feed upon human weaknesses, appetites, and passions, and that such vocations affect directly the public health and morals, and that their management comes directly within the scope of what is known as the police power, says: "Obviously, the regulation of houses of ill fame, legislation in respect to woman of loose character, may involve one of three possibilities: First, absolute prohibition; second, full freedom in respect to place, coupled with rules of conduct; or, third, a restriction of the location of such houses to certain defined limits. Whatever course of conduct the Legislature may adopt is in a general way conclusive upon all courts, state or federal. It is no part of the judicial function to determine the wisdom or folly of a regulation by the legislative body in respect to matters of a police nature. Now, this ordinance neither prohibits absolutely nor gives entire freedom to the vocation of these women. It attempts to confine their domicile, their lives, to certain territorial limits. Upon what ground shall it be adjudged that such restriction is unjustifiable; that it is an unwarranted exercise of the police power? Is the power to control and regulate limited only as to the matter of territory? May that not be one of the wisest and safest methods of dealing with the problem? At any rate, can the power to so regulate be denied? But given the power to limit the vocation of these persons to certain localities, and no one can question the legality of the location. The power to prescribe a limitation carries with it the power to discriminate against one citizen and in favor of another. Some must suffer by the establishment of any territorial boundaries. We do not question what is so earnestly said by counsel for plaintiff in error in respect to the disagreeable results from the neighborhood of such houses and people; but, if the power to prescribe territorial limits exists, the courts cannot say that the limits shall be other than those the legislative body prescribes. If these limits hurt the present plaintiffs in error, other limits would hurt

others. But clearly the inquiry as to the reasonableness or propriety of the limits is a matter for legislative consideration, and cannot become the basis of judicial action. The ordinance is an attempt to protect a part of the citizens from the unpleasant consequences of such neighbors. Because the legislative body is unable to protect all, must it be denied the power to protect any? It is said that this operates to depreciate the pecuniary value of the property belonging to the plaintiffs in error, but a similar result would follow if other limits were prescribed, and therefore the power to prescribe limits could never be exercised, because, whatever the limits, it might operate to the pecuniary disadvantage of some property holders. The truth is that the exercise of the police power often works pecuniary injury; but the settled rule of this court is that the mere fact of pecuniary injury does not warrant the overthrow of legislation of a police character." As sustaining the principle here enunciated, the cases of Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659, 24 L. Ed. 1036, and Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, are cited.

The principle of this decision is not affected, it seems, by that provision of our Constitution which declares, in effect, not only that private property shall not be taken for public use, but that it shall neither be damaged nor applied to such use without adequate compensation being made, unless by consent of the owner. If the property of the citizen, under Constitutions declaring that it shall not "be taken" for public use without compensation, may, indeed, be taken for such use in the proper exercise of the police power of the state, it is difficult to understand why it may not be "damaged" in the proper exercise of such power under a Constitution providing that his property shall not "be damaged" without compensation. That is may be so incidentally damaged, notwithstanding such a constitutional provision, without compensation therefor, we think it well settled. The able judge who wrote the opinion in L'Hote v. City of New Orleans, supra, after quoting with approval the section of Mr. Dillon's work on Municipal Corporations, which is quoted in a former part of this opinion, says: "The learned author, in these and accompanying sentences, is discussing the rule when legislative action operates directly upon the property of the complainant and where injuries alleged to result are the direct consequence of legislative action. If, under such circumstances, the individual has no cause of action, a fortiori must the same be true when the injuries are not direct but consequential, when his property is not directly touched by the legislative action but is affected in only an incidental and consequential way." Similar views are expressed by the Supreme Court of this state, under the Constitution as it now exists, in the case of Railway Co. v.

City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850. That was a suit to enforce by mandamus an ordinance, authorized by the charter of the city of Dallas, requiring railway companies, at their own expense, to reduce their tracks at street crossings to the grade of the streets. The respondents in the suit contended, among other things, that the reduction of its railroad embankment, at the expense of respondent, would be a taking or damaging of its property without compensation, and therefore the ordinance was invalid. In overruling this contention the Supreme Court held that the ordinance was not an attempt to assert either the power of taxation by local assessment or the power of eminent domain, but was an assertion merely of the police power over crossings, the validity of which must be tested by the principles applicable to that power; that the limitation on the power of eminent domain that property shall not be taken or damaged for public use without adequate compensation does not of itself impose any restriction on the proper employment of the police power touching any subject lying within its sphere of operation. The effect of this decision is to declare that damages sustained to property by reason of the legitimate exercise of the police power are not recoverable against the government itself nor against those "inferior governmental bodies to whom the power may be properly committed," and that such damages offer no impediment to the passage or enforcement of an ordinance passed in the exercise of such power.

By subdivision 4 of section 3, art. 2, of the charter of the city of Dallas, under the title "Police Powers," express authority is conferred upon the city, as follows: "To prohibit and punish keepers and inmates of bawdy houses and variety shows; to prevent and suppress assignation houses and houses of ill fame and to regulate, colonize and segregate the same; to determine such inmates and keepers as vagrants and to provide for the punishment of such persons." In article 12, p. 74, of the city charter, under "Saloon Limits and Restrictions," we find the following: "Provided further, that should the city of Dallas set aside any definite territory upon which to colonize and segregate prostitutes, as is provided for in another section of this charter, in said territory so designated there shall never be established any saloon, as the same is hereinbefore defined, nor shall spirituous, vinous or malt or intoxicating liquors of any kind whatever be sold within said designated territory." Again, as further evidencing the purpose of the Legislature to confer upon the city of Dallas the power to prescribe limits outside of which bawdy houses should not be conducted, we find that, while article 362a of an act of the Legislature, passed in 1907, amending article 359, c. 4, tit. 10, of the Penal Code, declares that the use or contemplated use of any premises, place, building or part thereof, for

the purpose of keeping a bawdy or disorderly house shall be enjoined at the suit of either the state or any citizen thereof, and that article 362b makes it the duty of the Attorney General and the district and county attorneys to institute and prosecute all suits that they or either of them may deem necessary, to enjoin such use, yet it is expressly provided in said article 362a "that the provision of this article and article 362b shall not apply to nor be so construed as to interfere with the control and regulation of bawds and bawdy houses by ordinances of incorporated towns and cities, acting under special charters, and where the same are actually confined by ordinance of such city without a designated district of such city." The language of the charter and of the statutes here quoted is sufficiently clear and explicit to show beyond question that it was the intention of the Legislature to confer power upon the governing body of the city of Dallas to fully deal with the "social evil" within the boundaries of said city by police regulations, and if necessary, in its best judgment, for the general welfare of the community, to prescribe limits outside of which no woman of lewd character should reside. And whether, in prescribing such limits, they acted wisely or unwisely, is not a matter for the consideration of this court.

The authorities mentioned lead, inevitably, we think, to the conclusion that the ordinance in controversy is not void for the reasons urged in the assignment of error under consideration. But appellant's counsel insists that these authorities, and especially the case of L'Hote v. City of New Orleans, are not in point or conflict with the decisions of this state. In this view we do not concur. The cases to which counsel refers differ in essential particulars from those cited and discussed by us, and it is not believed that there is any serious conflict in them.

The next contention of the appellant is that the court erred in sustaining the general demurrer of the defendants, because, they say, the ordinance in question is in conflict with and abrogates and repeals the articles of the Penal Code of Texas prohibiting and making criminal and punishable by fine and imprisonment the keeping of bawdy houses; hence said ordinance is void, and, unless its enforcement is enjoined, it will irreparably injure complainants.

We do not believe the ordinance is in conflict with the state law. It prescribes no penalty, nor does it attempt to give to the keepers of bawdy houses or prostitutes license to carry on their business, and profit by a taxation of the same, or to conduct themselves within the limits assigned in such a manner as to disturb the public peace. Neither does it attempt, or have the effect, to prevent the enforcement of the state statutes against the character of persons or houses with which it seeks to deal. The only restraining effect it can have upon the action

of any state officer is that which is authorized by article 362a, referred to in a former part of this opinion. So far as the criminal statutes, dealing with the subject, are concerned, the officers charged with the duty of enforcing such statutes are left free and untrammeled to perform their duty. The confining of bawds and bawdy houses within certain limits by an appropriate ordinance, under a charter like that of the city of Dallas, without offering them any protection, is not, in our opinion, violative of or inconsistent with any of the penal laws of this state. Such action is but the legitimate exercise of the police power of the local government by which it seeks to protect itself against the existence of such evils. The decisions of the Court of Criminal Appeals of this state, cited by appellant in support of his propositions, are not, we believe, in conflict with this opinion, or, if they are, the rule announced therein, and for which appellant contends, has been greatly limited, if not abrogated, by later decisions. In the cases of Garonzik v. State, 50 Tex. Cr. R. 533, 100 S. W. 374, and Williams v. State, 52 Tex. Cr. R. 371, 107 S. W. 1121, ordinances of the city of Dallas relating to the liquor traffic and prescribing the limits within which saloons shall not be maintained, thereby confining their establishment and maintenance to that portion of the city not included within the limits described, were expressly upheld. Similar rulings were made by this court in the cases of Cohen v. Rice, 101 S. W. 1053, and Paul v. State, 48 Tex. Civ. App. 25, 106 S. W. 448. The action of the city was sustained in these cases upon the ground that the ordinances attacked attempted only to regulate the sale of intoxicating liquor by confining such sales to a particular portion of the city, under the police power delegated to it by the provisions of its charter. In the case of Ex parte Abrams, 56 Tex. Cr. R. 465, 120 S. W. 883, the majority of the Court of Criminal Appeals goes further and holds that a provision contained in the charter of the city of Texarkana limiting the number of saloons to two in each half block, and providing that in the event there should be at any one time more than two applications for the issuance of a saloon or retail liquor dealer's license for any particular half block the city council should determine in their discretion which two applications should be accepted, etc., was not a prohibitory law, but a valid regulation of the sale of liquor. The court said: "We think it well within the power of the Legislature to impose such reasonable regulations on the conduct and licensing of saloons as in their judgment the public good and the general welfare of the community required." The cases of the Courts of Civil Appeals cited by counsel for appellant are either distinguishable in the facts from the case we are considering, or do not, in some respects, express the law as we understand it, and cannot

be accepted as authority in determining the question now under discussion, or the one discussed under the first assignment of error.

In City of San Antonio v. Schneider, 37 S. W. 767, it was held that the charter of said city giving it the power by ordinance "to prevent and punish the keeping of houses of prostitution * * * and to adopt summary measures for the removal or suppression or license, taxation, regulation and inspection of all such establishments" did not authorize the city to tax and license bawdy houses. In the case before us, as heretofore stated, the ordinance does not attempt to tax and license the keeping of bawdy houses, and therefore presents a materially different question from that passed on by the court in the case mentioned. The case of M. McDonald et al. v. Thelma Denton et al. (recently decided by the Court of Civil Appeals for the Fourth District, and not yet officially published), 132 S. W. 823, was an action to enjoin the sheriff, constable, and a justice of the peace of Harris county, Tex., from "issuing, serving and executing any writ or process against the appellees therein, being twenty-six women, on charges of vagrancy, growing out of their being prostitutes, or engaged in keeping houses for the purpose of prostitution." It was claimed that these women had the right and authority to engage in such business and practices under the authority of the charter of the city of Houston, empowering said city to prohibit and punish keepers and inmates of bawdy houses, and to segregate and regulate the same, and an ordinance designating and setting apart a certain portion of the city, outside of which such characters should not reside. The lower court granted and perpetuated the injunction, as prayed for; but on appeal the Court of Civil Appeals for the Fourth District held, in effect, that the jurisdiction of a court of equity could not be invoked to enjoin prosecutions for a violation of a valid criminal statute of this state and reversed the judgment of the district court and dismissed the cause. The court also entertained the view, it seems, that the authority mentioned, upon which the city of Houston has established a "reservation" for lewd women and the keepers of houses of prostitution, has the effect to suspend and set aside the laws of the state as to one class of vagrants, and annuls the statutes punishing the keeping of bawdy houses. In the view that the jurisdiction of a court of equity cannot be invoked to enjoin the peace officers in this state from the prosecution of a valid, criminal statute, we concur; but to the view that the provision of the charter of the city of Houston, and the ordinance passed by virtue thereof, establishing in said city limits beyond which no bawdy house shall be conducted, had the effect to suspend or annul the statutes of this state declaring prostitution and the keeping of a bawdy house to be a crime and punishable as such, and were therefore without authority of law and void, we do not agree.

The appellees insist that their general demurrer to the petitions of the appellants was properly sustained because it affirmatively appears from said petitions that appellants are seeking to have a court of equity interfere and in advance restrain the exercise by a municipal corporation of powers that are legislative in their character. It is well settled that, where the functions of the governing body of a municipal corporation are purely legislative or political, its action cannot be interfered with by a co-ordinate branch of the government; that courts will not enjoin the passage of an ordinance upon a matter within the legislative discretion of such body, but, in view of the foregoing conclusions with respect to the questions presented by the appellants, it becomes unnecessary to decide whether or not, under the facts alleged, the rule is applicable in this case. We will say, however, without definitely deciding the question, that we are inclined to think the contention of appellees is not well taken. It appears from appellants' petitions that the ordinance in question was, before the institution of this suit, finally passed, approved by the mayor of the city of Dallas and correctly enrolled; but it had not been published in the manner and for the length of time claimed by appellees to be necessary under the charter of the city to vitalize and give it effect.

We have carefully read the very able and exhaustive brief of learned counsel for appellants, and given each and every proposition therein contended for due consideration, but have been unable, under the authorities, to escape the conclusion that the charter of the city of Dallas, or the ordinance passed by said city's board of commissioners, by authority thereof, is not violative of any right vouchsafed to appellants by the Constitution of this state; and that no ground exists upon which to enjoin the enforcement of said ordinance.

The judgment of the court below is therefore affirmed.